UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GLOBAL ENERGY SERVICES, INC().

VERSUS

US APPLICATORS, LLC

CIVIL ACTION NO.

18-512-JWD-EWD

## RULING ON MOTION FOR SANCTIONS

Before the Court is a Second Motion for Sanctions (the "Motion"),[1] filed by Defendant and Plaintiff-in-Counterclaim US Applicators, LLC ("USAL"), which was referred for disposition. USAL seeks an award from the Court for fees and costs associated with the first Fed. R. Civ. P. 30(b)(6) corporate deposition of Global Entergy Services, Inc. ("Global"), the Plaintiff and Defendant-in-Counterclaim. Global has filed an opposition memorandum[2] and a hearing was held on the Motion.[3] After considering the briefs and the arguments of the parties at the hearing, the relevant facts and the law, the Motion is **GRANTED IN PART**,[4] for the reasons set forth below.

### I.    Background

This Motion is USAL's second request for relief in connection with the Fed. R. Civ. P. 30(b)(6) deposition of Global. On December 21, 2018, USAL filed its first Motion for Relief under Fed. R. Civ. P. 37 (the "Motion for Relief"),[5] seeking sanctions against Global arising out the December 11-13, 2018 corporate deposition of Global that took place in Boston, Massachusetts (the "Boston deposition"). USAL contended that Global's corporate representative, Director of

---

[1] R. Doc. 34.
[2] R. Doc. 42.
[3] R. Doc. 43.
[4] *See Celanese Corporation v. Clariant Corporation,* No. 14-4165, 2016 WL 4039162, at *1 (N.D. Tex. July 28, 2016) *citing Merritt v. International Broth. of Boilermakers*, 649 F.2d 1013, 1016-17 (5th Cir. 1981) (per curiam) (a magistrate judge has authority to enter a nondispositive order granting attorneys' fees as a sanction under Fed. R. Civ. P. 37).
[5] R. Doc. 24.

Vegetation Management and Matting and Access Divisions, Dana Newton ("Newton"), was not sufficiently prepared to testify on the 49 Matters for Examination ("MFEs") designated by USAL on the Fed. R. Civ. P. 30(b)(6) Notice of Deposition ("Notice") served on Global, and further contended that Global failed to produce the documents requested in the Notice pursuant to Fed. R. Civ. P. 34. USAL sought an order (1) compelling Global to produce a knowledgeable and prepared corporate witness(es) for another Fed. R. Civ. P. 30(b)(6) deposition, (2) compelling Global to search and produce all non-privileged documents responsive to the Notice and (3) ordering Global to pay USAL's fees and costs incurred in the preparation for, and taking of, the Boston deposition and the filing of the Motion for Relief. On January 8, 2019, an in-person status conference was held on the Motion for Relief. At that time, the Motion for Relief was denied as moot because the parties agreed to conduct a second 30(b)(6) deposition of Global in Baton Rouge with the corporate representatives traveling to Baton Rouge at Global's cost. Global also agreed to produce the documents requested. At USAL's request, and upon a showing of good cause, USAL was given until March 1, 2019 to file any additional discovery motion(s) related to the issues raised in the Motion for Relief in the event the parties were not able to fully resolve the issues.[6]

On February 13-15, 2019, USAL resumed the corporate deposition of Global (the "Baton Rouge deposition"), with Newton again designated as Global's corporate representative.[7] USAL timely filed this Motion following the Baton Rouge deposition since the parties were not able to fully resolve the issues raised in the Motion for Relief, specifically, the amount of fees Global would pay USAL related to the Boston deposition,. On March 20, 2019, a hearing was held on the Motion. At the hearing, the parties agreed to continue to discuss the issues raised in the Motion and were ordered to file a joint notice updating the Court as to whether they were able to resolve

---

[6] R. Doc. 26.
[7] R. Docs. 34-3 and 34-9.

the issues.[8] On March 29, 2019, the parties filed their Joint Notice, advising the Court that they were unable to reach a resolution.[9]

## II. Law and Analysis

### A. Legal Standards

Fed. R. Civ. P. 30(b)(6) provides, in pertinent part:

> ***Notice or Subpoena Directed to an Organization.*** In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify….The persons designated must testify about information known or reasonably available to the organization.

To comply with the requirements of Rule 30(b)(6), the organization "'must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to *prepare* those persons in order that they can answer fully, completely, unevasively, the questions posed ... as to the relevant subject matters.'" "[T]he duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved." The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources.[10] Moreover:

> [A] rule 30(b)(6) designee does not give his personal opinions, but presents the corporation's 'position' on the topic. When a corporation produces an employee pursuant to a rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition. This extends not only to facts, but also to subjective

---

[8] R. Doc 43, pp. 2-3.
[9] R. Doc. 45.
[10] *Brazos River Authority v. GE Ionics, Inc.,* 469 F.3d 416, 433 (5th Cir. 2006) (all internal citations omitted).

beliefs and opinions. If it becomes obvious that the deposition representative designated by the corporation is deficient, the corporation is obligated to provide a substitute.[11]

Fed. R. Civ. P. 37(d)(1)(A) and Fed. R. Civ. P. 37(d)(3) authorize the court to order the various sanctions listed in Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi)[12] if a witness designated pursuant to Fed. R. Civ. P. 30(b)(6) fails, after being served with proper notice, to appear for his/her deposition.[13] Fed. R. Civ. P. 37(d)(3) further provides that, instead of, or in addition to, the sanctions referenced above, "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

**B. Arguments of the Parties**

USAL first requested Global's corporate deposition in mid-October 2018. At that time, Global sent the draft deposition notice, containing 47 matters for examination and related Fed. R. Civ. P. 34 document requests.[14] On October 30, 2018, USAL's counsel emailed Global's counsel to confirm that Global's corporate deposition would take place in Boston, Massachusetts, and that "Dana Newton will be the 30(b)(6) rep for Global on all of the subjects listed in US Applicators' draft notice," which Global confirmed the next day.[15] A couple of days later, USAL forwarded the final Notice, which by then contained 49 MFEs and related document requests.[16] The dates of

---

[11] *Brazos*, 469 F.3d at 433 (emphasis added) (internal citations omitted).
[12] The sanctions provided for at Fed. R. Civ. P. 37(b)(2)(i)-(iv) are as follows: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; and, (vi) rendering a default judgment against the disobedient party.
[13] "If the designated 'agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all.'" *Brazos,* 469 F.3d at 433–34, *citing Resolution Trust Corp. v. Southern Union Company, Inc.,* 985 F.2d 196, 197 (5th Cir. 1993).
[14] R. Doc. 34-6.
[15] R. Doc. 34-7, pp. 2-3.
[16] R. Doc. 34-7, pp. 1, 5-19.

December 11-13, 2018 were agreed upon for Global's corporate deposition (via Newton) in Boston, as well as the personal depositions of Newton and of Global's former president and founding owner, Kevin Pomerleau ("Pomerleau").[17] The parties ultimately agreed the corporate deposition would take place first.[18]

The Boston deposition began, as agreed, on December 11, 2018, with Newton as Global's corporate representative.[19] Newton testified that he was designated as the representative of Global to testify as to all of the MFEs.[20] After two and a half days of deposing Newton as Global's corporate representative, USAL stopped the deposition,[21] contending that Newton was not adequately prepared to testify as to the 49 MFEs because, for example, Newton had not spoken to witnesses with knowledge and/or reviewed the relevant information beforehand, and also contending that Global failed to produce all of the documents requested in the accompanying requests for production, primarily because Newton determined that the documents were proprietary.[22] USAL argues that Global had the final deposition notice in early November 2018, but failed to designate an adequately prepared witness, failed to produce all of the requested documents, failed to submit written objections to the MFEs and/or failed to seek a protective order until after the Boston deposition took place.[23] USAL contends that Newton's inability to fully

---

[17] R. Doc. 34-9, p. 47, 51-52.
[18] R. Docs. 34-7, 34-8, and 34-1, p. 5.
[19] *See* the 800-page December 11-13, 2018 deposition transcript at R. Doc. 34-2.
[20] R. Doc. 34-1, p. 10 *and see* R. Doc. 34-2, pp. 11-12.
[21] R. Doc. 34-2, pp. 785-87. USAL's arguments as to the merits of its counterclaim against Global (*i.e.*, Global's alleged liability for payment to USAL) at R. Doc. 34-1, pp. 2-4, are irrelevant to the instant Motion.
[22] R. Doc. 34-1, pp. 6, 9-11, *citing* several portions of Newton's corporate testimony regarding his preparation, *e.g.*, R. Doc. 34-1, pp. 10-11, *citing* R. Doc. 34-2, pp. 49-50 (Newton only spoke with counsel and one other Global employee in preparation); R. Doc. 34-2, pp. 50-51, 61 (Newton did not speak with any other Global employees specifically for the deposition) *and* R. Doc. 34-2, p. 118-19, 122-23, 199 (Newton did not testify as to some of the MFEs because they sought information considered "proprietary" to Global, which could not be disclosed to USAL as a competitor of Global).
[23] R. Doc. 34-1, p. 6, 19. On February 6, 2019, Global filed a Motion for Protective Order, wherein it sought the entry of a protective order providing protection for the production of proprietary information sought by USAL in connection with the resumption of Global's corporate deposition, limiting the disclosure of the information to counsel for the parties, and shielding Global from having to produce information Global contended was irrelevant, among other

testify about all 49 MFEs at the Boston deposition constituted no appearance, and that Global's failure to prepare and/or seek appropriate safeguards forced USAL to conduct duplicate depositions and waste time and resources.[24]

USAL acknowledges that Newton was much more prepared for many of the MFEs by the Baton Rouge deposition, but also testified that the information he used to prepare for the Baton Rouge deposition was available to him before the Boston deposition.[25] Likewise, by the time of the Baton Rouge deposition, Global had secured a protective order, and as a result, "a number of key documents withheld during the Boston Deposition were produced and related substantive testimony was given."[26] However, USAL also argues that Newton was still not prepared to testify and/or did not know/provide responsive answers to some of the MFEs at the Baton Rouge deposition,[27] and, although Global produced "a large amount of documents in connection with the Baton Rouge Deposition," some responsive documents have still been withheld.[28]

USAL seeks: (1) attorneys' fees incurred for the preparation for the Boston deposition; (2) attorneys' fees incurred for the taking of the Boston deposition; (3) costs and expenses that were duplicated because of "Global's failure to present an adequately prepared witness for the Boston

---

grounds. R. Doc. 28. On February 12, 2019, a telephone conference was conducted to discuss the Motion for Protective Order, after which the parties agreed to resume Global's corporate deposition and attempt to resolve the issues raised in the Motion for Protective Order. R. 30. The parties were able to resolve the issues without further Court intervention and the Motion for Protective Order was terminated as moot. R. Doc. 43.

[24] R. Doc. 34-1, pp. 1, 9, *citing Brazos,* 469 F.3d at 433-34.

[25] R. Doc. 34-1, pp. 7, 12-14 (providing examples contrasting Newtown's testimony from the Boston and Baton Rouge depositions at R. Docs. 34-2, 34-4, and 34-9 including, *e.g.,* MFE 3, Global's bid for the Entergy contract and MFE 4, Global's actual costs, profits, and profit margin on the Entergy contract).

[26] R. Doc. 34-1, pp. 16-17 (regarding 80 relevant spreadsheets and 25 other responsive documents produced before the Baton Rouge deposition in response to Doc. Request 3.1 (documents related to Global's bid for the Entergy contract) that that were not reviewed prior to the Boston deposition and for which no privilege log had been prepared); and R. Doc. 34-1, p. 18 (regarding 50 weekly cost reports that were produced before the Baton Rouge deposition in response to Doc. Request 4.1 (documents related to Global's costs and profit margins on the Entergy contract), but which were previously objected to as being inadmissible, non-discoverable and proprietary, *see* R. Doc. 34-2, pp. 167-68.

[27] R. Doc. 34-1, pp. 14-16, *citing* R. Doc. 34-2, p. 470 (MFE 8), pp. 534-35 (MFE 18), and pp. 143-46 (why Global did not pay USAL's invoice).

[28] R. Doc. 34-1, p. 18, n. 62, *citing* documents not produced in response to MFEs 8.1 and 13.1. However, USAL has not filed a motion to compel regarding these allegedly-withheld documents.

deposition, including court reporting expenses and transcripts"; and (4) attorneys' fees incurred in connection with USAL's initial Motion for Sanctions and this Motion.[29]

In opposition, Global contends that, during the Boston deposition, Newton was knowledgeable about "every issue asked of him with few exceptions,"[30] and on such exceptions, Newton deferred to Pomerleau.[31] Global argues that it notified USAL that Pomerleau was also a designated corporate representative who would testify as to the matters in the 49 MFEs about which Newton was not knowledgeable in order to complete the corporate deposition in Boston;[32] however, USAL chose not to depose Pomerleau at that time and chose instead to continue questioning Newton. USAL ultimately questioned Newton for two and half days in Boston and three more days in Baton Rouge. USAL also deposed Pomerleau as a corporate representative at the Baton Rouge deposition (after his individual deposition on March 18, 2019). According to Global, despite USAL's opportunity to question Pomerleau about the topics on which Newton had no knowledge;[33] USAL did not ask many of the questions that Newtown deferred to Pomerleau.[34]

Global also argues that sanctions are not warranted as to the document production as all documents have now been produced in light of the parties' agreements and the entry of the protective order, which includes those documents that were withheld at the Boston deposition on the basis that they contained proprietary information.[35]

---

[29] R. Doc. 34-1, p. 2.
[30] Global contends that it objected to some of the areas of inquiry as irrelevant and inadmissible. R. Doc. 32, p. 4.
[31] R. Doc. 42, p. 1.
[32] R. Doc. 42, pp. 2, 4.
[33] R. Doc. 42, pp. 2-5.
[34] R. Doc. 42, pp. 3, 5.
[35] Global subsequently produced the documents previously considered proprietary in light of the parties' agreement to production of such information limited to counsels' eyes only. Nevertheless, Global contends that it also waived this limitation at the March 19, 2019 deposition. R. Doc. 42, pp. 6-7.

### C. As Global Produced Corporate Witnesses at Global's Cost, Only Sanctions for One Day of the Boston Deposition and for the Filing of the Motion are Warranted

"Where corporate designees are not prepared to testify on the topics about which they are to be questioned, it is appropriate that the court order the corporation to re-designate witnesses and mandate their preparation for the renewed deposition."[36] Thus, the primary relief warranted in the scenario at bar is the resumption of the corporate deposition with a knowledgeable witness. It does not appear that a party is usually awarded fees and costs associated with the first deposition *and* a second deposition at the other party's expense.[37]

In this case, following USAL's first Motion for Relief, the parties jointly agreed to resume Global's corporate deposition in Baton Rouge, with the witnesses traveling here at Global's cost. Global provided Newton and Pomerleau as corporate representatives at the Baton Rouge deposition, and USAL's agrees that, for the most part, Newton provided significantly more informed testimony about the MFEs during that deposition.[38] While Newton could (and should) have been more prepared for the Boston deposition, in deciding whether fees and costs to USAL are warranted, it is of concern that USAL elected to conduct the Boston deposition for two-and-a-half days and chose not to question Pomerleau at that time on matters that Newton deferred to

---

[36] *Ash v. Ford Motor Co.,* No. 06-210, 2008 WL 1745545, at *1 (N.D. Miss. Apr. 11, 2008) (granting motion for sanctions and ordering a previously minimally-prepared corporate deponent (or another adequately prepared substitute) to be re-deposed and ordering the defendant to bear the costs and attorney's fees associated therewith) *citing Cox Communications of Louisiana v. I.C. Fiber Louisiana, LLC,* No. 01-3828, 2003 WL 22326400,*1 (E.D. La. Oct. 6, 2003); *and see Brazos*, 469 F.3d at 433 ("If it becomes obvious that the deposition representative designated by the corporation is deficient, the corporation is obligated to provide a substitute.").

[37] *See, e.g., Robinson v. Nexion Health At Terrell, Inc.*, No. 12-3853, 312 F.R.D. 438, 443 (N.D. Tex. June 4, 2014) (granting attorneys' fees and costs that the plaintiff incurred in preparing for and taking corporate representative's most recent deposition, and in preparing and filing the plaintiff's motion for sanctions and reply brief and requiring another deposition, but not at non-movant's cost); *see also Resolution Tr. Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993) (awarding fees associated with first deposition where both original corporate witnesses lacked knowledge; no award of fees and costs for second deposition); *Celanese*, 2016 WL 4039162, at * 3 (declining to award fees and costs where a substitute corporate representative had already been presented).

[38] R. Doc. 34-1, pp. 7, 10, 12-14.

Pomerleau.[39] The over *eight-hundred page* transcript of the Boston deposition reflects that USAL was convinced, at least by mid-way through the second day, that Newton was not prepared as to all of the MFEs.[40] Despite this awareness, USAL continued to depose Newton, instead of either terminating the deposition in favor of the production of a more knowledgeable witness or accepting Global's proffer of Pomerleau as a corporate representative on the second day of the Boston deposition.[41] While the Court sympathizes with the need to make a record regarding a witness's lack of preparation, it should not take three days and 800 pages to accomplish that end. In choosing to go forward solely with Newton as Global's corporate representative in Boston for more than two days, USAL did not sufficiently mitigate its damages associated with Newton's lack of preparation. Finally, given that Global allowed its corporate representatives to be deposed for far more than the prescribed limitation of one day of seven hours at both depositions, it appears that Global was not intending to be obstructionist.

Balancing these facts, USAL is entitled to attorney's fees of Mr. Marionneaux[42] and costs associated with the first day of the Boston deposition. It should not take more than the allotted seven-hour day to conclude that a corporate witness is not adequately prepared to testify, even where, as here, there are almost 50 areas of inquiry. Notwithstanding that USAL was eventually

---

[39] This is particularly surprising given USAL's representation that it was Pomerleau who directed that payments not be made to USAL for the work allegedly done and that part of USAL's concern with Newton's deposition was Newton's inability "to give sworn testimony identifying the actual reason for Global's failure to pay." *See* R. Doc. 34, pp. 3-4.

[40] *See* R. Doc. 34-2, pp. 403, 407-10 ("Mr. Marionneaux: So that is going to be a big issue, that we have come up here and what has, basically, been a waste of time with regard to getting the deposition of Global, because the majority of the time has been spent with Mr. Newton telling us that he has not prepared for this deposition as Global's representative by doing anything other than relying on his memory….I want to continue on. And I want to keep making my record that this man is totally unprepared to appear as a 30(b)(6) representative for Global."); *and see* R. Doc. 34-2, p. 411-12 (Mr. Marionneaux: "And this man is not here—he has made no good faith effort to find out what the company's knowledge is on the vast majority of the 49 topics for examination. And we've come up here expecting that, incurred great expenses for our clients…and we've got nothing done except to show Global did not get ready for this deposition. That's pretty much what we've established.").

[41] R. Doc. 34-2, pp. 403, 412 (representations that Pomerleau could fill-in any gaps in Newton's testimony).

[42] Other counsel for USAL, *e.g.*, Patrick Hunt, Robert Dille and Rebecca Zotti, appeared and/or were present at the depositions, but the transcript reflects that Mr. Marionneaux conducted the Boston deposition.

able to conduct an adequate corporate deposition, the time and expense of the first day of the Boston deposition was wasted by the inadequate preparation of Newton. Additionally, an award of reasonable attorney's fees associated with the preparation and filing of this Motion is warranted. By no later than April 8, 2020, USAL shall submit an itemized list of the attorney's fees associated with Mr. Marionneaux's taking of the Boston deposition for the first day, the court reporting costs associated with the first day of the Boston deposition, and the reasonable fees associated with the filing of this Motion, as well as documentation in support of such expenses, including invoices, attorney billing time entries, etc.[43]

USAL is also not entitled to fees and costs associated with preparation for the Boston deposition because such preparation was necessary anyway and was useful to the taking of (and limited additional preparation for) the Baton Rouge deposition;[44] nor costs and/or fees associated with USAL's requests for documents, as the evidence indicates that the documents were produced and the requests substantially resolved by the taking of the Baton Rouge deposition,[45] which permitted USAL to question the witness about the newly produced documents.[46] Nor is USAL entitled to the expenses associated with the preparation and filing of the first Motion for Relief,

---

[43] To the extent such documentation contains attorney-client privileged or work product information, the documentation can be filed under seal pursuant to the Court's administrative procedures, with a redacted copy filed publicly.

[44] USAL does not expressly seek an award of its travel costs to the Boston deposition in the Motion, as it recognizes "that these initial travel-related expenses are part of the cost of litigation." R. Doc. 34-1, pp. 1-2. Moreover, the undersigned indicated during the January 8, 2019 hearing that such expenses were unlikely to be awarded because USAL was already scheduled to go to Boston for the personal depositions of Pomerleau and Newton and therefore USAL would have incurred the travel costs regardless of the sufficiency of Newton's corporate testimony.

[45] As reflected in the deposition transcript and noted by Global at the January 8, 2019 hearing, Global produced a substantial volume of documents to USAL responsive to the deposition document requests at some point before the Boston deposition, and did not withhold production of any of those documents on the basis that they were proprietary, privileged, or contained work product. Instead, Global elected to enter a protective order (subsequently entered by the undersigned) that provided protection to the proprietary documents, and "claw-back" any privileged information. *See* R. Doc. 34-2, pp. 171-173, 175, 177, 183-84, 186.

[46] R. Doc. 34-1, p. 17 (noting that after Plaintiff filed its Motion for Protective Order and the undersigned held a telephone conference with the parties (*see* R. Docs. 28 and 30), "[C]ounsel for both parties thereafter reached an accommodation allowing the production of documents for the Baton Rouge deposition under agreeable terms….As a result, a number of key documents withheld during the Boston deposition were produced and related substantive testimony was given.") *and see* R. Doc. 42, p. 6-7.

which led to the parties' agreement to conduct the second round of Global corporation depositions in Baton Rouge, with Global paying its witnesses' travel costs.

**III. Conclusion**

Accordingly,

For the good grounds set forth herein, the Motion for Sanctions,[47] filed by US Applicators LLC, is **GRANTED IN PART**.

**IT IS ORDERED** by no later than **April 8, 2020**, US Applicators LLC shall submit an itemized list of the attorney's fees associated with Mr. Marionneaux's taking of the Boston deposition for the first day, the court reporting costs associated with the first day of the Boston deposition, and the reasonable fees associated with the filing of this Motion, as well as documentation in support of such expenses, including invoices, attorney billing time entries, etc.

In all other respects, the Motion for Sanctions is **DENIED.**

Signed in Baton Rouge, Louisiana, on March 26, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[47] R. Doc. 34.